[Civ. No. 22963.   Second Dist., Div. Three.   Sept. 11, 1958.]

JUANITA KOENIG, Appellant, v. CLARENCE S. COE, Respondent.

Joseph G. Hurley and Henry F. Walker for Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Respondent.

VALLÉE, J.—Appeal by plaintiff from a judgment for defendant Clarence S. Coe entered on a jury verdict in an action for damages for personal injuries.

The only specification of error is that the court failed and refused to correctly instruct the jury. Consequently the evidence and the reasonable inferences to be drawn therefrom will be stated in the light most favorable to plaintiff. ▇ In determining whether the instructions are correct we must assume that the jury might have believed the evidence on which the cause of action of plaintiff was predicated, and that if correct instructions had been given on that subject the jury might have rendered a verdict in favor of plaintiff. (*Clement* v. *State Reclamation Board*, 35 Cal.2d 628, 643-644 [220 P.2d 897].)

The accident, between two automobiles, happened shortly before midnight on November 11, 1955, at the intersection of Western Avenue and Palos Verdes Drive North in county territory of the county of Los Angeles.

Western Avenue is 60 feet in width and runs generally north-south. Palos Verdes Drive North is 30 feet in width and runs generally east-west. The intersection was a four-way stop—there was a stop sign at each corner. The area was "open rural country." Defendant testified it was clear and dry in the area of the intersection at the time of the collision.

George Dietrich was driving his Buick north on Western in the lane next to the center line. Plaintiff was riding in the Buick as Dietrich's guest. She had worked all day with her corneal contact lenses in place, and as her eyes had begun to

water and to be annoyed by the lenses she had removed them. As they approached the intersection and for at least a half mile before it was reached, she was sitting on the right-hand side of the car resting her eyes and she saw nothing of the events prior to the accident.

Defendant Coe testified: he was driving a Jaguar west on Palos Verdes; he lived about four miles from the intersection and "frequently" had driven by or through it; there was a stop sign at the intersection for westbound traffic with a limit line on the street about one foot east of the easterly edge of Western; he stopped "several feet behind the limit line"— to the east of it; he remained stopped about 10 to 20 seconds, during which time no traffic passed through the intersection in any direction; his view to the south (for northbound traffic) was unobstructed; he looked south and saw the only car approaching northbound; it was in the lane next to the double center line; it was about 200 or 250 feet away; he continued to watch the northbound car from one to three seconds; he "assumed that it was safe to proceed"; there was no other traffic about or around; when the Buick was about 200 or 250 feet away he put his car in gear and moved from 5 or 6 feet east of the easterly curb of Western into the intersection; he took his eyes off the Buick for an instant; at the time he did so it had traveled from where he first had seen it to within 150 or 100 feet or less of his car; the Buick did not stop; when his front wheels were about on the center line of Western his car was struck by the Buick; he heard the tires screeching shortly before the Buick hit; he was going between 5 and 15 miles an hour when his car was struck; the Buick was going 50 to 55 miles an hour when it struck his car; during the one to three seconds that he watched the Buick approach to within 150 or 100 feet or less of his car, it did not appear to be slowing down.

Defendant further testified: "Q. Now, at any time while you were in a stopped position did you make any observation to your left, in other words southerly on Western Avenue? A. Yes. Q. All right. Now, did you see anything when you made that observation? A. I saw a car coming. Q. Did you make any observation at that time regarding the speed of this vehicle? A. Approximately 50 miles an hour."

Plaintiff requested the court to give the first paragraph and either the second or third paragraph, but not both, and the fourth paragraph of this instruction:

"A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate an accident which can be occasioned only by a violation of law or duty by another.

"[However, an exception should be noted: the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty.]

"[However, certain circumstances qualify the foregoing rules as follows: A person does not have the rights which they define when it is reasonably apparent to him, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty.]

"[One is not justified in ignoring obvious danger although it is created by another's misconduct, nor is he ever excused from exercising ordinary care.]"[1]

The trial judge gave the first part of the instruction only and refused to give the second, third, and fourth paragraphs. Plaintiff asserts it was error not to give either the second or third paragraph and not to give the fourth paragraph.

The instruction, as requested by plaintiff, was given and approved in *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 166 [195 P.2d 416]. In *Beseau* v. *George*, 111 Cal.App.2d 807 [245 P.2d 542], this court stated (p. 809):

"While one has the right to expect the driver of an approaching vehicle to obey the law, and is not necessarily negligent in failing to anticipate danger that would come only through violation of law, the requirements of due care do not permit him to be indifferent to the movements of such other vehicle. He must exercise ordinary care to observe whether the driver of the other vehicle is proceeding in violation of law, and he must conform his own conduct to standards of common prudence and caution."

In *Carlson* v. *Shewalter*, 110 Cal.App.2d 655 [243 P.2d 549], the court instructed the jury (p. 658): " 'One lawfully using a public highway is entitled to rely on the presumption that others will not violate the law, and no negligence can be predicated on the failure to anticipate an unlawful movement in another on the highway.' " It was held (p. 658):

---

[1]This was BAJI No. 138. The request was by number, as permitted by rule 16a, Judicial Council Rules for the Superior Court. BAJI told the trial judge to "use either the second or third paragraphs, not both."

"The instruction should have included the qualification 'One may not continue to assume that the law is being observed after knowing or having an opportunity, by the use of reasonable care, to know that it is not being observed.' "

In *Wilson* v. *Los Angeles Trona Stages, Inc.*, 133 Cal.App. 2d 756 [284 P.2d 951], the plaintiff was riding in the defendant's bus. A Buick coming toward the bus on the wrong side of the road collided head-on with the bus. The court gave this instruction (p. 760) : " 'The driver of the bus in question, if exercising the care required of him under the law, had a right to assume and act upon the assumption that the drivers of other vehicles upon the highway would obey the law and would not in violation thereof interfere with the operation of the bus. Therefore, under such circumstances, it was not negligence on the part of the driver of the bus to fail to anticipate that some other driver might violate the law, if you should find such to have been the case at the time and place of this accident.' " The verdict was for the defendant bus company. Reversing, this court stated (p. 761) :

" [T]he preliminary condition stated in the above-quoted instruction, namely, 'if exercising the care required of him [bus driver] under the law,' was not an adequate qualification of an instruction to the effect that a driver may assume that other drivers will obey the law. A reference to the original file of the case (in the county clerk's office) shows that a notation at the bottom of the instruction is 'See Form 138— BAJI.' That form includes the substance of the instruction as given herein, and it also includes, as a second part thereof, the following statement: 'However, an exception should be noted : the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty.' It is to be noted that the principle of law referred to in the second part of that form (either as the principle pertains to the use of ordinary care or utmost care) was omitted from the instruction as proposed by defendants. In *Edlund* v. *Los Angeles Ry. Co.*, 14 Cal.App.2d 673 [58 P.2d 928], wherein only ordinary care was required of the drivers, it was said at page 675 : 'One may not continue to assume that the law is being observed after knowing or having an opportunity, by the use of reasonable care, to know that it is not being observed.' In *Angier* v. *Bruck*, 56 Cal.App.2d 55 [131 P.2d 876], wherein automobiles collided at an intersection, the jury

was instructed (p. 58) at the request of plaintiff that if plaintiff 'was at all times pertinent to this case driving plaintiff's automobile in a careful and prudent manner, and exercising that degree of care which is ordinarily exercised by cautious persons, then he had a right to assume that the defendant, James Platt, would drive his automobile in a lawful manner and would exercise for his own safety, the care and caution which an ordinarily prudent person would exercise under the same or similar circumstances.' It was held therein that the instruction was erroneous in that it did not include the qualification that one may not continue to assume that the law is being observed after knowing or having an opportunity, by the use of reasonable care, to know that it is not being observed. In reversing the judgment for plaintiff, it was said therein at page 60: 'Plaintiff attempts to escape this result by pointing to the preliminary condition stated in the instruction, "if Raymond Angier [plaintiff] was at all times pertinent to this case driving plaintiff's automobile in a careful and prudent manner . . . then he had a right to assume" etc. This apparently, and as the jury must have understood it, refers to acts done before the making of the assumption referred to. It cannot serve the purpose of a plain statement of the qualification of the rule, which relates to conduct of the driver after he has made the assumption referred to in the instruction. . . . The qualification which was omitted is an essential part of the rule attempted to be stated. Defendant was entitled to have it enunciated in clear and positive language.' "

The failure to qualify the instruction was, under the facts of this case, prejudicial error. There was evidence from which the jury might have found that defendant stopped at the limit line and after having observed the high speed of the Buick and noting its approximate distance and observing that it was not slowing down, he nevertheless put his own car in gear and proceeded into the intersection, taking his eyes off the rapidly approaching Buick when it was 150 or 100 or less feet from the intersection, and then continued forward into its path; and that in the exercise of ordinary care he could have avoided the collision either by not proceeding forward or by stopping his vehicle before reaching the lane in which the Buick was approaching. The jury could have found on ample evidence that in the exercise of ordinary care Coe was not entitled to assume that Dietrich would stop at the intersection. In other words, the jury could have found that it

was reasonably apparent to Coe, or in the exercise of ordinary care should have been apparent to him, that Dietrich was not going to stop at the intersection and, if they so found, that he had no right to rely and act on the assumption that Dietrich would stop, and consequently that Coe was negligent and that his negligence was a proximate cause of the accident. The effect of the instruction as given without the qualification was to tell the jury Coe had the right to assume Dietrich was going to obey all duties imposed on him by law and that Coe had a right to rely and act on that assumption. If the jury had been specifically instructed as stated in paragraph two or three of the instruction, we cannot say their verdict would not have been for plaintiff under the evidence. The qualification was not covered in other instructions. █ "Where, as here, the error consisted in instructing the jury as a matter of law on a question that is one of fact on conflicting evidence, and a determination favorable to the losing party might have been made if the error had not been committed, that error is prejudicial." (*Clement* v. *State Reclamation Board,* 35 Cal. 2d 628, 644 [220 P.2d 897].)

There was no evidence that plaintiff was contributively negligent. The negligence of Dietrich is not imputed to plaintiff. (*Cary* v. *Wentzel,* 39 Cal.2d 491, 495 [247 P.2d 341].) If Coe was negligent and his negligence was a proximate cause of plaintiff's injuries, it matters not how negligent Dietrich may have been.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.