[Civ. No. 10810.  First Appellate District, Division Two.—December 14, 1938.]

JOHN H. BENCICH, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

642

Wm. M. Abbott, Walter H. Linforth and Wm. M. Cannon for Appellants.

Edmund J. Holl for Respondent.

SPENCE, J.—Plaintiff, a hoseman employed in the fire department of the city and county of San Francisco, brought this action to recover damages for personal injuries sustained by him as the result of a collision between an interurban car of the defendant company and the fire chemical upon which he was riding. The cause was tried by the court sitting with a jury and plaintiff had judgment for $20,000. Defendants appeal from said judgment.

There have been three trials of this action. The first trial resulted in a verdict in favor of plaintiff in the sum of $20,000. Defendants made a motion for a new trial, which motion was granted. The second trial resulted in a verdict in favor of plaintiff in the sum of $5,000. Defendants made no motion for a new trial and took no appeal. Plaintiff did make a motion for a new trial, which motion was denied. Plaintiff then took an appeal and the judgment was reversed on the ground that the award of damages was inadequate. (*Bencich* v. *Market Street Ry. Co.*, 20 Cal. App. (2d) 518 [67 Pac. (2d) 398].) The third trial resulted in a verdict in favor of plaintiff in the sum of $20,000 as above indicated.

On this appeal, defendants contend first, that the trial court committed prejudicial error in giving certain instructions to the jury; second, that the trial court committed prejudicial error in its rulings excluding certain evidence; and third, that the damages awarded were excessive. It will be noted that defendants do not claim that the evidence was insufficient to sustain a verdict in favor of plaintiff.

The facts of the case are quite fully set forth in the opinion on the former appeal. (*Bencich* v. *Market Street Ry. Co.*, *supra.*) Defendants concede that the evidence introduced on the third trial was substantially the same as that introduced on the second trial and it appears unnecessary to repeat here the full summary of the evidence found in the former opinion. A brief outline of the factual situation should suffice.

The collision between the interurban street car and the fire chemical occurred at about 10 A. M. of October 11, 1933, at Seventeenth and Mission Streets in San Francisco. The fire chemical was proceeding in a westerly direction along Seventeenth Street in response to a fire alarm. The street car was proceeding in a northerly direction along Mission Street. The collision occurred after the front of the street car had passed the center of the intersection, and after the driver of the fire chemical had turned slightly to the right in an endeavor to avoid the street car. The left front portion of the fire chemical came in contact with a portion of the car at or near the right front thereof.

The fire chemical was being driven by John Wall. Plaintiff was seated in a separate front seat. Plaintiff had nothing to do with the driving of the fire chemical but it was his duty to sound the siren and ring the bell in order to warn traffic of the approach of the fire chemical. The great preponderance of the evidence shows that he was fully performing this duty. As pointed out in the former opinion, thirty-seven witnesses testified to that effect and we do not believe that defendants make any serious claim to the contrary.

The evidence with respect to the speed of the car and of the fire chemical was conflicting but there was abundant evidence to show that the car was exceeding the speed permitted by ordinance and that it proceeded into the intersection against the traffic signal located at said intersection. But aside from considerations of speed limits, traffic-signals and warning signals from the fire chemical, we believe it appropriate to set forth certain testimony of the defendant motorman which is important in determining whether the giving of the challenged instructions was prejudicial to defendants.

The salient facts for this purpose, as found in the testimony of the motorman, were as follows: That the speed of the car as it traveled from Eighteenth Street toward Seventeenth Street was about 15 to 20 miles per hour; that as the car came into the safety zone, he "checked it down to about 10 miles per hour" and continued into the intersection at that speed; that at said speed, it was possible to stop the car within a comparatively few feet; that as a street car comes to the south property of Seventeenth Street, the view

down Seventeenth Street is not obstructed and "if you are looking that way, you could see down probably a block or so"; that he nevertheless did not see or hear the fire chemical approaching on Seventeenth Street until he was "pretty near the center of the intersection" at which time "it must have been 50 or 75 feet down the street"; that he immediately turned and "put the power on, and with that, why we hit"; that he thought his car was going about 15 miles per hour at the time of the crash; that he did not see the fire chemical "move even a foot" from the time it came into his view until the moment of impact; and that there was not time for the snap of a finger between the time he first saw the fire chemical and the time of the impact. A reading of the entire testimony of the defendant motorman and particularly the foregoing excerpts therefrom, brings us to the view that the only rational conclusion that can be drawn from his own evidence is that he was chargeable with negligence which was the proximate cause, or at least a proximate cause, of the collision.

■ The main attack upon the instructions is directed at an instruction relating to the duty of the operator of a street car upon the approach of an authorized emergency vehicle, giving audible signal by siren. The trial court gave certain instructions at the request of defendants, which instructions quoted section 133 of the Vehicle Act and purported to apply that section to the facts in the case. The trial court also gave the challenged instruction at the request of plaintiff, which instruction quoted section 554 of the Vehicle Code and purported to apply that section to the facts of the case. Said sections of said codes deal with the same subject-matter, but it is conceded that said section 133 was in force at the time of the accident and that said section 554 was not in force at that time. It was therefore error to quote a section not in force at said time, but the question remains as to whether the error was of such a prejudicial nature as to require a reversal.

Said section 133 of the Vehicle Act as quoted to the jury, read as follows: "Upon the approach of any authorized emergency vehicle, giving audible signal by siren, . . . the operator of any street car shall immediately stop such street car unless at the time it is crossing an intersection, in which event it shall be operated so as to clear the intersection and

shall then be stopped until the authorized emergency vehicle shall have passed."

Said section 554 of the Vehicle Code, as quoted to the jury, reads as follows: "Upon the immediate approach of an authorized emergency vehicle giving audible signal by siren: . . . (2) The motorman of every street car shall immediately stop such car clear of any intersection and keep it in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police or traffic officer."

We find no substantial difference in the duty imposed upon the operator of a street car under the two sections and if the trial court had merely quoted said sections, no further discussion would be required to show that no prejudice could have resulted. A further question is raised, however, by the instructions of the trial court purporting to apply said sections to the facts. These instructions were proposed by the respective parties. They are lengthy and we do not believe it would serve any useful purpose to set them forth in full. We believe that a fair reading of the instructions as a whole shows that these instructions may be reconciled and, in any event, we find no error prejudicial to defendants in the giving of said instructions under the facts presented by the evidence and the theories of the parties. It was plaintiff's theory, sustained by abundant evidence, that the motorman ran the street car through the stop-signal at a high rate of speed and that he failed to make reasonable use of his faculties to learn of the approach of the fire chemical in time to stop the car before entering the intersection. It was defendants' theory that the motorman did not run his car through the stop-signal or at a high rate of speed, that he exercised due care at all times but did not learn of the approach of the fire chemical until he was near the center of the intersection and that it was then his duty under the statute to proceed across the intersection before stopping. Plaintiff's challenged instruction dealt with the duty, ordinarily imposed by statute, to stop the street car upon the approach of the fire chemical. Defendants' instructions dealt with the duty imposed by statute to proceed and clear the intersection before stopping upon the approach of the fire chemical in the event that the street car was then in the intersection. We may assume, without deciding, that it was proper for the trial court to give defendants' instructions on this subject even though the

evidence of the motorman shows that there was insufficient time for the street car to clear the intersection after the motorman actually learned of the approach of the fire chemical and it further appears that any attempt by the motorman thereafter to proceed and "clear the intersection" could result only in disaster. It is highly improbable, however, that the jury's implied finding of negligence on the part of the motorman was based upon anything which the motorman did or failed to do after actually learning of the approach of the fire chemical and it is likewise highly improbable that the jury was misled to the prejudice of the defendants by the giving of any of said instructions.

Defendants also complain of the giving of an instruction on the "imminent danger rule". The main point raised is that the instruction failed to inform the jury that one who claims the benefit of the rule must be without negligence on his part. It may be conceded that an instruction on this subject should be qualified in the manner indicated, but the question remains as to whether the omission of such qualification was prejudicial. Plaintiff was not the driver of the fire chemical and there was no evidence to show that the negligence, if any, of the driver of the fire chemical was imputable to plaintiff. While defendants did allege that plaintiff was guilty of contributory negligence, there is no substantial evidence in the record to support a finding to that effect. We therefore conclude that the error in said instruction could not have been prejudicial to defendants under the circumstances. Defendants make the further point that another portion of the same instruction was confusing and difficult to understand. It is not claimed there was error in said portion but even if there were, it cannot be said that defendants were prejudiced by the instruction on this subject for the reasons above stated.

Defendants further contend that the trial court erred in excluding evidence showing that approximately one year after the accident, plaintiff was retired (for disability resulting from the injuries received in said accident) upon a pension of $100 per month. We find no error in the trial court's ruling. There may be some conflict of authority on the subject, but the better view appears to be that such evidence is inadmissible for the purpose of reducing the amount of damages recoverable by the injured person on account of

loss of earning capacity. (*Heath* v. *Seattle Taxi Cab Co.*, 73 Wash. 177 [131 Pac. 843]; *Ring* v. *Minneapolis St. Ry. Co.*, 176 Minn. 377 [223 N. W. 619]; *Rusk* v. *Jeffries*, 110 N. J. L. 307 [164 Atl. 313]; *Geary* v. *Metropolitan St. Ry. Co.*, 73 App. Div. 441 [77 N. Y. Supp. 54].) The case of *Groat* v. *Walkup Drayage & Warehouse Co.*, 14 Cal. App. (2d) 350 [58 Pac. (2d) 200], is not in point as the evidence was not there admitted for the above-mentioned purpose.

Defendants further contend that the damages awarded were excessive. A sufficient description of plaintiff's injuries, the treatment thereof, the disability resulting therefrom and the amount of the special damages is set forth in the opinion on the former appeal. The award is large in amount but the injuries were severe and they resulted in a definite, permanent disability. We cannot say that the award was such as to suggest that it was made under the influence of passion or prejudice.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 13, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1939.